## A02A1246. BOLTON v. THE STATE.
(573 SE2d 479)

BARNES, Judge.

A Fayette County jury convicted Lisa Gail Bolton of possession of a controlled substance, OCGA § 16-13-30 (a). Before trial, Bolton moved to suppress the drugs seized because they were obtained during a warrantless search of her home without exigent circumstances. Following the denial of her motion for a new trial, Bolton appeals contending that the trial court erred in denying her motion to suppress. For the reasons that follow, we reverse.

In reviewing the grant or denial of motions to suppress, we construe the evidence to uphold the trial court's findings and judgment. Tate v. State, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); Leming v. State, 235 Ga. App. 710, 711 (1) (510 SE2d 364) (1998). That court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. State v. Bowen, 231 Ga. App. 95 (498 SE2d 570) (1998).

So viewed, the evidence at the motion to suppress hearing showed that on February 5, 2001, Fayette County Sheriff's Department Officer Jody Thomas received a tip from an anonymous caller that Bolton and another female, Elaine Wilson, were involved in the use and sale of methamphetamine at Bolton's residence. Based on this information, Officer Thomas placed Bolton's home under surveillance to obtain probable cause for a search warrant. When a black Camaro left Bolton's residence, Officer Thomas and another officer followed the vehicle until it stopped at a convenience store. They then approached the driver, who, as they discovered, was Wilson. Upon consent from Wilson, the officers searched the vehicle and recovered a quantity of methamphetamine, at which point the driver was arrested.

The officers returned to Bolton's home. They were in unmarked vehicles and were not in uniform, although their badges were displayed. Officer Thomas testified that "myself and Agent Santos went to the front door of the residence alone — the door was opened, Ms. Bolton was standing in the living room. And at the time we

approached she darted away from the living room." The officer also testified that while the main door to the residence was open, there was a Plexiglas door which was closed. It was through this door that the officers saw Bolton dart away. When Bolton ran away from the door, Officer Thomas testified that he announced his identity as a police officer, but Bolton continued to run, so he "opened the door and ordered her to stop." At the trial, however, Officer Thomas testified that as he was standing on the front steps of the residence, "Ms. Bolton looked up and saw myself and the other officer and tried to run to the back of the residence. At that time we entered the residence and ordered Ms. Bolton to stop, which she did, she complied."

Once inside the home, Officer Thomas told Bolton that they had followed Wilson from Bolton's residence and that Wilson had been arrested for possession of methamphetamine. He also told Bolton that he had knowledge that she might have methamphetamine in her home and asked Bolton if she would consent to a search. Officer Thomas testified that he explained to Bolton that she had the right to refuse and have him obtain a search warrant, and that Bolton responded that "there was no problem, go ahead and search." Approximately one gram of methamphetamine was recovered, and Bolton was arrested.

Bolton asserts that her consent to search was obtained pursuant to an illegal entry and the consent to search was thereby the "fruit of the poisonous tree." We agree.

In denying the motion to suppress, the trial court concluded that the officers did not enter the house "until such time as they identified themselves and [Bolton] began to run. They then asked her to stop, she stopped and she gave a valid consent."

We have recognized that a private home is "an 'unquestionable zone of privacy under the Fourth Amendment,'" and even where probable cause exists a warrantless search must be justified by exigent circumstances. *State v. Sims*, 240 Ga. App. 391, 392 (523 SE2d 619) (1999). Here, of course, the officers do not even claim that probable cause existed or that they had Bolton's consent to enter the house, but appear to rely solely on the fact that Bolton consented to the search. Our inquiry, however, is not whether Bolton consented to the search of her home, but whether circumstances existed for the warrantless entry into her home.

While a valid consent to search eliminates an officer's need to obtain a warrant, absent consent or exigent circumstances, a warrantless, nonconsensual entry into a home to conduct a search is unreasonable under the Fourth Amendment. *Payton v. New York*, 445 U. S. 573, 576 (100 SC 1371, 63 LE2d 639) (1980); *Mincey v. State*, 251 Ga. 255, 261 (6) (a) (304 SE2d 882) (1983); *Griffith v. State*, 172 Ga. App. 255, 256 (1) (322 SE2d 921) (1984). "An exigent circum-

stance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation. [Cit.]" (Punctuation omitted.) *State v. Shephard*, 248 Ga. App. 433, 435 (1) (546 SE2d 823) (2001).

Here, although the State argues that the officers entered Bolton's residence because the officers perceived an exigency, Bolton's flight to another part of the house, at the motion to suppress hearing, Officer Thomas testified that he perceived no exigent circumstances requiring his entry into Bolton's home. Further, the State does not explain how Bolton's flight into another room created an exigency.

There is no evidence that Bolton was aware that her house was under surveillance, or that Wilson had been arrested, and she was attempting to destroy evidence. Nor was there evidence that the officers asked Bolton to come out, but she refused and attempted instead to evade them. The State simply asserts that the officer's actions were "prudent and also to secure his safety." That is not sufficient cause to authorize the entry into the house.

Our review of the record does not show that the officers were in any danger from Bolton or anyone else. Further, Officer Thomas' testimony at the hearing does not reflect that the officers were acting upon a perceived threat. In *Cates v. State*, 232 Ga. App. 262 (501 SE2d 262) (1998), upon which the State "strongly relies," the officers entered Cates' apartment because they thought that the children within might be in danger, that their confidential informant, who was inside the apartment, might be hurt, that Cates might destroy evidence, and that Cates might flee to Florida. Id. at 263-264. Here, the State offers no explanation for its assertion that exigent circumstances dictated the warrantless entry into Bolton's home, and indeed, we cannot find one. Recognizing that whether exigent circumstances existed is a question of fact, and that we review police actions from the standpoint of a hypothetical reasonable officer and must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit, *State v. Brannan*, 222 Ga. App. 372, 373 (1) (474 SE2d 267) (1996), we conclude that the State failed to carry its burden to show the existence of exigent circumstances justifying the nonconsensual, warrantless entry. *Threatt v. State*, 240 Ga. App. 592, 596 (1) (524 SE2d 276) (1999).

Accordingly, the denial of Bolton's motion to suppress must be reversed.

*Judgment reversed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED OCTOBER 31, 2002.

*R. David Botts*, for appellant.
*William T. McBroom III, District Attorney, James E. Sherrill, Assistant District Attorney*, for appellee.