## A07A2297. RICHARDS v. THE STATE.

(659 SE2d 651)

JOHNSON, Presiding Judge.

A jury found Angela Richards guilty of trafficking methamphetamine and manufacturing methamphetamine. Richards appeals from the convictions, contending the trial court erred in denying her motion to suppress evidence seized from her home, and in sentencing her too harshly. We find no merit to the arguments, and affirm.

1. In reviewing a trial court's denial of a motion to suppress, we are required to accept the court's ruling on disputed facts unless it is clearly erroneous.[1] Additionally, we must defer to the trial court's judgment on the credibility of witnesses.[2] The evidence is to be construed most favorably to the upholding of the findings and judgment.[3]

Viewed in that light, the evidence shows that Richards' ex-husband, Wesley Richards, arrived at Richards' home to visit their

---

[12] *Jakobsen v. Colonial Pipeline Co.*, 237 Ga. App. 441, 447 (4) (514 SE2d 851) (1999) (physical precedent only).

[1] *Cates v. State*, 232 Ga. App. 262, 263 (501 SE2d 262) (1998).

[2] Id.

[3] Id.

13-year-old son. Richards' teenage nephew took Wesley Richards into the house and showed him various jars and containers set up throughout the house, some of which contained a product "that looked like crank or cocaine." Wesley Richards contacted the sheriff's office to report this.

When the sheriff's deputy arrived, Wesley Richards told him that he believed someone was "cooking" methamphetamine in the residence, and that his son lived in the house. The front door of the residence was standing open, and from the front yard the deputy could smell a strong chemical odor coming from the residence. As he peered inside, he could see mason jars filled with liquid and tubes protruding from the jars. The two men took about three steps into the living room. The deputy, who had seven to eight years of law enforcement experience, recognized the items as being used in the manufacture of methamphetamine. He knew that a methamphetamine laboratory presents dangers of explosion and fire, and that inhalation of the chemicals associated with such a laboratory can be fatal.

The deputy "shut everything down, [and] removed everyone away from the residence." He entered the house with the intention of "(m)aking sure there were no children . . . inside the residence." In his search for occupants, the deputy went to a back bedroom. There he saw more drug-manufacturing equipment. Although the deputy believed he had grounds to obtain a search warrant, he did not want to apply for a warrant before checking to see if children were inside the home. After determining there were no children in the house, the deputy called the drug task force and stayed outside until other officers arrived.

When a deputy with the drug task force arrived, he and other officers searched the perimeter of the house and discovered items consistent with the production of methamphetamine. The second deputy applied for and obtained a warrant to search the residence. A search of the premises was conducted pursuant to the warrant the next day.

Richards moved to suppress the evidence seized from her home, urging that the first deputy's initial warrantless entry was unlawful. The trial court denied the motion holding, among other things, that the deputy was justified in entering the residence because he was faced with an exigent circumstance. We agree.

> The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that search warrants be supported by probable cause. Absent exigent circumstances or

consent, an entry into a private dwelling to conduct a search or effect an arrest is unreasonable without a warrant.[4]

Richards is correct that the presence of contraband, without more, does not give rise to exigent circumstances.[5] Here, however, there was more. The officer was told that children lived in the house, he saw what appeared to be a methamphetamine laboratory, and he smelled chemicals which he believed were associated with a methamphetamine laboratory and could be hazardous to inhale.

An exigent circumstance which justifies the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation.[6] Fear for the safety of a young child believed to be in harm's way is an example of an exigent circumstance.[7] Whether exigent circumstances exist is a question of fact.[8] A reviewing court reviews police actions from the standpoint of a hypothetical reasonable officer and must measure those actions from the foresight of an officer acting in a quickly developing situation, not from the hindsight of which judges have benefit.[9] Under the circumstances presented, the trial court did not err in denying the motion to suppress.[10]

2. Richards contends the trial court erred in sentencing her under OCGA § 16-13-31 (f) (1) rather than under OCGA § 16-13-30 (b). She contends that because both statutes apply in this case, the principle of lenity requires that she be sentenced under the less harsh statute. We disagree.

The principle of lenity applies when two statutes governing the same conduct are conflicting with respect to their prescribed punishments.[11] In such a situation, a defendant is entitled to have the lesser of the two penalties administered.[12]

Richards was found guilty of violating OCGA §§ 16-13-30 (b) and 16-13-31 (f) (1). OCGA § 16-13-30 (b) provides that it is unlawful to manufacture, deliver, distribute, dispense, administer, sell or possess

---

[4] (Punctuation and footnotes omitted.) *Bray v. State*, 265 Ga. App. 886, 887-888 (595 SE2d 687) (2004).

[5] See *State v. Gray*, 285 Ga. App. 124, 128 (2) (645 SE2d 598) (2007).

[6] See *Burk v. State*, 284 Ga. App. 843, 844 (644 SE2d 914) (2007) (officer's reasonable belief that minors are consuming alcohol in a residence constitutes an exigent circumstance).

[7] Id.

[8] *Bolton v. State*, 258 Ga. App. 217, 219 (573 SE2d 479) (2002).

[9] Id.

[10] See *Burk*, supra at 845.

[11] *Webb v. State*, 270 Ga. App. 817, 819 (2) (608 SE2d 241) (2004); see *Woods v. State*, 279 Ga. 28, 30 (3) (608 SE2d 631) (2005).

[12] *Webb*, supra.

with intent to distribute any controlled substance. A violation of this statute carries with it a sentence of five to thirty years imprisonment.[13]

OCGA § 16-13-31 (f) (1) provides that a person who knowingly manufactures methamphetamine commits the offense of trafficking methamphetamine and, if the quantity is less than 200 grams, shall be sentenced to a minimum of ten years imprisonment, and shall pay a fine of $200,000.

In this case, the trial court merged the lesser manufacturing offense (OCGA § 16-13-30 (b)) into the greater manufacturing/trafficking offense (OCGA § 16-13-31 (f) (1)) for sentencing purposes, then sentenced Richards pursuant to the latter statute — sentencing her to twenty years in prison (to serve ten) and ordering her to pay a $200,000 fine. The offense of manufacturing methamphetamine is a lesser included offense of this particular type of trafficking methamphetamine offense, and thus the sentences for those two offenses were properly merged.[14] Consequently, the trial court was authorized to sentence her for the greater felony offense after merging the lesser felony offense into it.[15]

Furthermore, the most reasonable interpretation of the legislative intent in enacting OCGA § 16-13-31 (f) (1) was to supplant the general punishment provision of OCGA § 16-13-30 (b) with a specific and potentially more harsh punishment provision for manufacturing methamphetamine.[16] Here, there is no uncertainty as to which of the two statutes applies. "Where a crime is penalized by a special law, the general provisions of the penal code are not applicable."[17] Accordingly, the trial court did not err in imposing sentence under OCGA § 16-13-31 (f) (1).[18]

*Judgment affirmed. Mikell, J., concurs. Phipps, J., concurs in the judgment only.*

DECIDED MARCH 4, 2008 —
RECONSIDERATION DENIED MARCH 19, 2008.

*Christopher G. Paul*, for appellant.

---

[13] OCGA § 16-13-30 (d).

[14] *Wesson v. State*, 279 Ga. App. 428, 433 (4) (631 SE2d 451) (2006).

[15] See generally *Webb*, supra at 818 (2) (felony sexual battery conviction properly merged into felony child molestation conviction (the greater offense) for sentencing). Compare *Brown v. State*, 276 Ga. 606, 608-609 (2) (581 SE2d 35) (2003) (where same conduct constituted both a felony and a misdemeanor, lenity required defendant to be subjected to the penalties for the misdemeanor rather than the felony).

[16] See *Woods*, supra.

[17] (Citations and punctuation omitted.) Id. at 31 (3).

[18] See id.

*T. Joseph Campbell, District Attorney, Gregory S. Dickson, Assistant District Attorney*, for appellee.